IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

JOE HAND PROMOTIONS, INC.,          )
                                    )
        Plaintiff,                  )
                                    )
        v.                          )   CASE NO. 1:25-cv-00201-RAH
                                    )
DUKE BUSINESS GROUP, LLC            )
*doing business as*                 )
Ciscos Bourbon & Cigar Club, *et al.*,  )
                                    )
        Defendants.                 )

## MEMORANDUM OPINION AND ORDER

Plaintiff filed its Complaint on March 12, 2025, and effectuated service on the Defendants on June 9, 2025. Under the Federal Rules of Civil Procedure, Defendants had until June 30, 2025, to file a response. Defendants did not do so. The Clerk of Court thereafter entered a default against the Defendants on August 6, 2025. Plaintiff then filed a *Motion for Default Judgment as to All Defendants* (doc. 21) on October 3, 2025. This Court issued an *Order to Show Cause* (doc. 23) to the Defendants on October 6, 2025, which gave Defendants until October 20, 2025, to explain to the Court why a default judgment should not be entered against them. No response was filed. As such, and for good cause, Plaintiff's Motion (doc. 21) is due to be **GRANTED**.

Under Federal Rule of Civil Procedure 55(b)(2), this Court can enter a default judgment against a party who has failed to respond to a complaint. Fed. R. Civ. P. 55(b)(2). When a party fails to file a response to a complaint, that failure constitutes an admission by the defendants of all well-pleaded allegations in the complaint. *See Cotton v. Massachusetts Mut. Life Ins. Co.*, 402 F.3d 1267, 1278 (11th Cir. 2005)

(citing *Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975)).[1] "[H]owever[,] . . . a defendant's default does not in itself warrant the court in entering a default judgement[,] . . . [because a] defendant is not held to admit facts that are not well-pleaded or to admit conclusions of the law," and "there must be a sufficient basis in the pleadings for the judgment entered." *Nishimatsu Constr. Co*, 515 F.2d at 1206. Here, a sufficient basis for default judgment is present.

As set out in Plaintiff Joe Hand Promotions, Inc.'s well-pleaded Complaint, Plaintiff "is a company that specializes in distributing premier sporting events to commercial, non-residential establishments . . . ." (Doc. 1 at 3.) "Since 2001, Plaintiff has been the exclusive domestic commercial distributor for the world's premier mixed martial arts promotion company, the Ultimate Fighting Championship [("UFC")]." (*Id.*) Defendants, upon the information and belief of Plaintiff, are an Alabama limited liability company doing business as Cisco's Bourbon and Cigar Club ("Cisco's"), Shirely Dukes, an owner of Cisco's, and Lorenzo Dukes, an owner of Cisco's. (*Id.* at 2–3.)[2] Plaintiff's Complaint also states that Shirley and Lorenzo Dukes had the "right and ability to supervise [the establishment] and an obvious financial interest in the activities of the [e]stablishment at all relevant times." (*Id* at 6.)

Plaintiff alleges that though it was granted the sole and exclusive license to distribute UFC broadcasts to commercial entities, and though "[t]he interstate

---

[1] In *Bonner v. Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit Court of Appeals adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

[2] While this Court acknowledges that "upon information and belief" is not a sufficient phrasing to require a defendant's adoption of those statements as established fact at the default judgment stage, Plaintiff only uses this phrasing with respect to the citizenship of the Defendants. Because this Court has federal question jurisdiction, through 47 U.S.C §§ 533, 605, Plaintiff's use of this phrasing does not change the analysis of the Court. 28 U.S.C. § 1331; *see also Innovative Sports Management, Inc*, 2024 WL 5167662, at *3.

satellite transmissions of the Programs were electronically coded or scrambled and were not available to or intended for the free use of the general public . . . [,]" the Defendants subverted the licensing process, without consent or payment, in order to air UFC broadcasts to their patrons on both March 4, 2023, and January 18, 2025. (*Id.* at 3–6; *see also* Doc. 21-1 at 1.) Plaintiff further alleges that the Defendants obtained the broadcasts willfully, through wrongful and illegal acts, either by (1) "[i]ntercepting and redirecting cable or satellite service from a nearby residence"; (2) "[r]egistering their business location as a residence"; (3) "[m]oving a cable or satellite receiver from a residence to their business"; (4) "[o]btaining the Programs in violation of the terms of their television service provider agreement"; or (5) "[e]xploiting restricted online access to the Programs by streaming the Programs over the internet through a limited number of legitimate online distributors offering the Programs only for *non-commercial use*." (Doc. 1 at 4.) Accordingly, whether by the interception of a satellite signal or through a cable signal, Plaintiff asserts that they have a federal private right of action through 47 U.S.C §§ 553, 605. (*Id.* at 6–7.)

47 U.S.C § 605 "prohibits the unauthorized third party reception of satellite transmissions for fee-paying subscribers[,]" *Innovative Sports Management, Inc.*, 2024 WL 5167662, at *2, while § 553 prevents "intercept[ing] or receiv[ing] or assist[ing] in intercepting or receiving any communications service offered over a cable system, unless specifically authorized to do so by a cable operator or as may otherwise be specifically authorized by law[,]" 47 U.S.C. § 553. Under either section, Plaintiff must show that the Defendants (1) "intercepted the program"; (2) "did not pay for the right to receive the transmission"; and (3) "displayed the program to their commercial establishment." *Joe Hand Promotions, Inc. v. Prestige Elite Lifestyle, LLC*, No. 18-cv-22984, 2019 WL 11075705, at *2 (S.D. Fla. Sept. 10, 2019). "To hold [a] Defendant . . . vicariously liable in his individual capacity as

an officer, director, shareholder[,] and/or principal of the [establishment] under 47 U.S.C. § 605, Plaintiff must show that [the defendant] had a 'right and ability to supervise the violations, and that he had a strong financial interest in such activities." *Joe Hand Promotions, Inc. v. Sports Nut, LLC*, No. 4:16-CV-1890-VEH, 2017 WL 6492546, at *2 (N.D. Ala. Dec. 19, 2017) (citing *J&J Sports Productions, Inc. v. Arboleda*, No. 6:09-cv-467-Orl-18DAB, 2009 WL 3490859, at *5 (M.D. Fla. Oct. 27, 2009)).

By not responding to Plaintiff's Complaint and defaulting, Defendants have admitted as true that they "intercept[ed] and/or receive[d] each of the Programs for free or at nominal cost[,]" "public[ly] display[ed] . . . the Programs at [Cisco's] . . . to entice patrons to [Cisco's] to spend money while viewing the Programs[,]" and that they "did not have license, authorization, permission, or consent from Plaintiff to exhibit any of the Programs in the [e]stablishment." (Doc. 1 at 5–6.) Further, both Shirley and Lorenzo Dukes have admitted that they possessed the ability and right to supervise the establishment and that they had strong financial interests in the activities of the establishment. (Doc. 1 at 2–3.) Under these well-pleaded facts, Plaintiff has established a sufficient basis for a default judgment against the Defendants. The question then turns to what damages Plaintiff is entitled.

Given that the Defendants are liable for violations under both 47 U.S.C § 553 and § 605, Plaintiff can choose between recovering actual damages or statutory damages. *See* 47 U.S.C §§ 553(c)(3)(A)-(C); 605(e)(3)(C)(i). Here, Plaintiff elects to recover statutory damages, as actual damages are difficult to calculate both due to the Defendants' lack of participation in this lawsuit, as well as the difficulty in determining the Defendants' increase in profits resulting from the advertising and exhibiting of the UFC fights.

Plaintiff has provided the Court with a sworn piracy affidavit, in which the affiant describes the March 4, 2023, showing of a UFC fight at Cisco's. (*See* Doc.

21-2.) In that affidavit, the affiant states that Cisco's had a capacity of roughly eighty to ninety people, and that roughly thirty-seven to forty people viewed the fight. Plaintiff has also provided the Court with the rates that Cisco's would have been charged to purchase the fight from Plaintiff. (*See* Doc. 21-6.) Based upon the capacity of Cisco's, and Plaintiff's rates, Cisco's would have been charged $1,095.00 for each occasion it wanted to broadcast a UFC fight.

Here, Defendants have admitted, by default, that they showed fights on two occasions: March 4, 2023, and January 18, 2025. Accordingly, Plaintiff contends that their statutory damages should amount to $8,760.00, which Plaintiff claims is reasonable because the advertised price for obtaining both broadcasts at an establishment with Cisco's capacity was $2,190.00 and because enhanced statutory damages of $6,570 due to the two admitted violations ($3,285 per violation) are appropriate.  Plaintiff also seeks its attorney's fees of $1,500 and court costs of $447.00. (*See* Doc. 21-1 at 13–14.) In total, Plaintiff requests $10,707.00.

The Court finds these damages, fees, and costs reasonable and appropriate, especially given that the Defendants willfully exhibited two UFC broadcasts, no cover charge was imposed, roughly forty people viewed the first broadcast, Cisco's had a capacity for roughly eighty to ninety people to view a broadcast on any given occasion, and because enhanced damages will serve to deter future willful violations. *See, e.g., Joe Hand Promotions, Inc. v. Meola*, No. 10-cv-4781, 2011 WL 2111802, at *6–7 (N.D. Cal. Apr. 22, 2011) (awarding $5,000.00 in enhanced damages for an illegal broadcast to approximately 50 people), report and recommendation adopted, 2011 WL 2066613 (N.D. Cal. May 26, 2011); *Joe Hand Promotions, Inc. v. Piacente*, No. 10-2439, 2011 WL 2111467, at *6–8 (N.D. Cal. Apr. 11, 2011) (awarding $5,000.00 in enhanced damages for an illegal broadcast shown to approximately 25 people), report and recommendation adopted, 2011 WL 2160631

(N.D. Cal. May 26, 2011); *Garden City Boxing Club, Inc. v. Lan Thu Tran*, No. 05-05017, 2006 WL 2691431, at *2 (N.D. Cal. Sept. 20, 2006) (awarding $5,000.00 in enhanced damages for an illegal broadcast shown to 40 people); *Kingvision Pay-Per-View, Ltd. v. Chavez*, No. 00-cv-2270, 2000 WL 1847644, at *3 (N.D. Cal. Dec. 11, 2000) (awarding $5,000.00 in enhanced damages for two broadcasts shown to 40 people and 13 people, respectively).

Accordingly, it is **ORDERED** as follows:

(1) Plaintiff's *Motion for Default Judgment as to All Defendants* (doc. 21) is **GRANTED**;

(2) Defendants, jointly and severally, **SHALL** pay $10,707.00 to Plaintiff; and,

(3) A separate judgment will be entered.

**DONE** on this the 18th day of November 2025.

R. AUSTIN HUFFAKER, JR.
UNITED STATES DISTRICT JUDGE